UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                       )
LARRY KLAYMAN,                         )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )        Civil Action No. 08-1005 (JDB)
                                       )
DAVID BARMAK, individually, and        )
MINTZ, LEVIN, COHN, FERRIS,            )
GLOVSKY AND POPEO, P.C.,               )
a professional corporation             )
                                       )
            Defendants.                )
_____)


**<u>MEMORANDUM OPINION</u>**

       This is a breach of contract and breach of fiduciary duty case filed by Larry Klayman

("plaintiff") against David Barmak, an individual, and Mintz, Levin, Cohn, Ferris, Glovsky, and

Popeo, P.C., a law firm (collectively, "defendants").  Plaintiff alleges that defendants breached

their contractual and fiduciary duties to plaintiff by publishing false and damaging information,

disclosing statements protected by attorney-client privilege, and representing the interests of

another client, Judicial Watch, against plaintiff's own interests.  Now before the Court is

defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim.[1]  For the reasons

discussed below, defendants' motion is denied.

_____

[1] The papers submitted in connection with this matter include: Amended Complaint ("Am.
Compl."), Defendants' Memorandum in Support of the Motion to Dismiss ("Mot."), Plaintiff's
Memorandum in Opposition ("Opp."), and Defendants' Reply Memorandum in Support of
Motion to Dismiss ("Rep.").

## BACKGROUND

Klayman is the former Chairman, General Counsel, and Treasurer of Judicial Watch. Am. Compl. ¶ 5.  He currently resides in Florida.  Id. ¶ 2.  Barmak resides in Maryland, practices law in Washington, D.C., and is a partner at the law firm Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo.  Id. ¶ 3.  Barmak serves as outside general counsel for Judicial Watch, and Klayman alleges that Barmak also represented him individually.  Id. ¶ 6.

In a previous action in this Court, Klayman brought claims against several Judicial Watch employees for fraudulent misrepresentation, breach of contract, unjust enrichment, violation of the Lanham Act, violation of Florida statute § 540.08, rescission for breach of contract, and defamation.  See Klayman v. Judicial Watch, Inc., Civ.A.No. 06-670, 2007 WL 140978 (D.D.C. Jan. 17, 2007) ("Klayman I").  Some of those claims are still pending, but Judge Kollar-Kotelly dismissed others, including the charge of defamation relating to the publication of allegedly false materials contained in Judicial Watch's Form 990 tax returns.  The defamation claim was dismissed because Judicial Watch was required to prepare the Form 990 tax returns, so they were absolutely privileged against a defamation claim.  Id. at *18.

In that action, Judicial Watch subsequently filed a counterclaim for trademark infringement, unfair competition, and cybersquatting, and then filed an amended counterclaim. Klayman v. Judicial Watch, Inc., 247 F.R.D. 10, 12 (D.D.C. 2007) ("Klayman II").  The amended counterclaim included Klayman's then-wife's allegations about Klayman -- allegations that were originally set forth in a sealed divorce hearing and then were relayed by Klayman himself to several Judicial Watch employees and Barmak.  Id. at 17.  Klayman filed a cross-motion for sanctions arguing that Judicial Watch's disclosure of his ex-wife's allegations violated his

2

attorney-client privilege because he made the comments in the presence of Barmak, who, he asserts, was both his personal lawyer and Judicial Watch's general counsel.  Id.  Judge Kollar-Kotelly ruled that the allegations were not covered by attorney-client privilege because even if Barmak represented both Judicial Watch and Klayman individually, the presence of another Judicial Watch employee destroyed any potential attorney-client privilege.  Id.

Klayman brought this suit in Florida state court on November 1, 2007.  The causes of action in the present suit arise from events occurring in September 2003 -- the same events that formed the basis of Klayman I and Klayman II.  Am. Compl. ¶¶ 14-22.  Defendants, asserting diversity jurisdiction, removed this case to the District Court of the Southern District of Florida and then moved to dismiss or for transfer based on lack of personal jurisdiction, improper venue, and forum non conveniens.  Mot. at 2.  The Southern District of Florida transferred the case to this Court under 28 U.S.C. § 1404(a) and did not reach defendants' personal jurisdiction arguments.

Defendants have now moved to dismiss, asserting that this action is barred by the D.C. statute of limitations.  Defendants also argue that Judge Kollar-Kotelly's prior decisions collaterally estop two of plaintiff's claims here:  that defendants' assistance in producing Judicial Watch's Form 990 tax returns (that allegedly include false statements) constitutes a breach of contract and a breach of fiduciary duty, and that defendants breached their contractual and fiduciary duties by publishing Klayman's ex-wife's allegations in the amended counterclaim they filed on behalf of Judicial Watch.

3

**STANDARD**

All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (per curiam). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp., 127 S. Ct. at 1964-65; see also Papasan v. Allain, 478 U.S. 265, 286 (1986). Instead, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp., 127 S. Ct. at 1965 (citations omitted). However, a court "must not make any judgment about the probability of the plaintiff's success, for a complaint 'may proceed even if it appears that a recovery is very remote and unlikely'" or that the plaintiff "will fail to find evidentiary support for his allegations." Aktieselskabet AF 21. November 21 v. Fame Jeans, Inc., 525 F.3d 8, 17 (D.C. Cir. 2008).

The notice pleading rules are not meant to impose a great burden on a plaintiff. Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512-13 (2002). When the sufficiency of a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor. Leatherman v. Tarrant County Narcotics &

4

Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979); see also Erickson, 127 S. Ct. at 2200 (citing Bell Atl. Corp., 127 S. Ct. at 1965)).  The plaintiff must be given every favorable inference that may be drawn from the allegations of fact.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).  However, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." Kowal v. MCI Commc'n Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Nor does the court accept "legal conclusions cast in the form of factual allegations."  Aktieselskabet AF 21. November 21, 525 F.3d at 17 n.4; see also Domen v. Nat'l Rehab. Hosp., 925 F. Supp. 830, 837 (D.D.C. 1996) (citing Papasan, 478 U.S. at 286).

## ANALYSIS

### I.  Statute of Limitations

Defendants argue that this case should be dismissed because D.C. law -- which imposes a three-year statute of limitations for breach of contract and breach of fiduciary duty actions -- should apply because a federal court must apply the law of the state in which it sits.  Mot. at 7-9; see D.C. Code Ann. §§ 12-301(3), (7).  Plaintiff responds that Florida state law -- which has a five-year statute of limitations for tort and contract actions -- should apply because the case was originally brought in Florida state court.  Opp. at 2; see Fla. Stat. § 95.11 (2008).[2]

Defendants' very argument was raised and rejected by the Supreme Court in Van Dusen v. Barrack, 376 U.S. 612, 637-39 (1964).  At issue in Van Dusen was the interplay of transfer and

---

[2]  When this case was before the District Court for the Southern District of Florida, defendants argued that the Florida courts lacked personal jurisdiction over them.  In transferring the case to this Court for forum non conveniens, the Florida district court did not reach defendants' personal jurisdiction argument.

the so-called Erie doctrine.  The Erie doctrine provides that a federal court sitting in diversity must apply state substantive law.  See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  The Erie doctrine "establishes 'the principle of uniformity within a state'" and requires "that federal courts in diversity of citizenship cases are to apply the laws 'of the states in which they sit.'"  Van Dusen, 376 U.S. at 637 (internal citations omitted); see also Guaranty Trust Co. of New York v. York, 326 U.S. 99, 108 (1945).  But in considering the Erie doctrine in the context of a case that has been transferred from one federal court to another, the Van Dusen Court cautioned that "[a] superficial reading of these [Erie] formulations might suggest that a transferee federal court should apply the law of the State in which it sits rather than the law of the transferor State.  Such a reading, however, directly contradicts the fundamental Erie doctrine."  Van Dusen, 376 U.S. at 637-38.  The Supreme Court reasoned that contained within the Erie doctrine is the notion that "for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away, should not lead to a substantially different result."  Id. at 638 (quoting Guaranty Trust Co., 326 U.S. at 109).  Hence, application of the Erie doctrine to 28 U.S.C. § 1404(a) demands that "the 'accident' of federal diversity jurisdiction does not enable a party to utilize a transfer to achieve a result in federal court which could not have been achieved in the courts of the State where the action was filed."  Van Dusen, 376 U.S. at 638.  Transfer under § 1404(a) "was not designed . . . to defeat the state-law advantages that might accrue from the exercise of this venue privilege but rather the provision was simply to counteract the inconveniences that flowed from the venue statutes by permitting transfer to a convenient federal court."  Id. at 635.  For these reasons, in diversity cases, "where the defendants seek transfer, the

transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue." Id. at 639.

Applying Van Dusen to this case plainly requires the application of Florida state law. Because this case was originally brought in Florida state court, then removed to a Florida federal district court, and then transferred to this Court, this Court is the transferee district court.  Under Van Dusen, this Court -- as the transferee -- must apply Florida state law, for that is the law that would have applied had the case not been transferred.  Florida state law provides a five-year statute of limitations for tort actions.  Fla. Stat. § 95.11 (2008).  The conduct that allegedly constituted a breach of contract and fiduciary duty occurred in 2003, which is less than five years from 2007, when plaintiff brought this suit. Hence, this action is not time barred under Florida law.

Nonetheless, defendants make the common-sense argument that it is unfair to apply Florida law because the Florida courts never had personal jurisdiction over them.  See Rep. at 1 n.1.  Although personal jurisdiction is not presently at issue in this case (because this Court indisputably has personal jurisdiction over defendants), defendants' argument raises a troubling policy issue.  If a plaintiff files suit in one state and agrees to transfer the case to a second state, it could effectively import the first state's statutes of limitations under Van Dusen even if there was no personal jurisdiction over the defendant there -- a result that could encourage creative forum-shopping.  Because the issue of personal jurisdiction in the Florida courts has never been decided, the Court will order further briefing to determine whether the Florida courts had personal jurisdiction over defendants in the first place, and if not, what that means for the statute of limitations.

II.  Collateral Estoppel

The doctrine of collateral estoppel prevents parties from relitigating an identical issue already decided by another court.  Dep't of Health and Rehabilitative Servs. v. B.J.M, 656 So.2d 906, 910 (Fla. 1995).  Under Florida law, "[t]he essential elements of the doctrine [of collateral estoppel] are that the parties and issues be identical, and that the particular matter be fully litigated and determined in a contest which results in a final decision of a court of competent jurisdiction."  Id.; see also Quinn v. Monroe Cty., 330 F.3d 1320, 1329 (11th Cir. 2003) (holding that collateral estoppel requires that "(1) an identical issue, (2) has been fully litigated, (3) by the same parties or their privies, and (4) a final decision has been rendered by a court of competent jurisdiction").[3]  The Florida Supreme Court has explained that "a ruling must be 'on the merits' for an issue to have truly been 'decided' and thus preclude the consideration of an issue."  Topps v. State, 865 So.2d 1253, 1255 (Fla. 2004) (emphasis in original).

*A.  Form 990 Tax Returns*

Defendants seek to estop Klayman from litigating whether defendants' assistance in the production of Judicial Watch's Form 990 tax returns constituted a breach of contract and a breach of fiduciary duty.  Mot. at 9-11.  Defendants rely on Klayman I, in which Judge Kollar-Kotelly dismissed Klayman's claim that Judicial Watch's filing of Form 990 tax returns -- which allegedly included false and defamatory information -- constituted defamation.  Klayman I at

---

[3]  As previously explained, this Court, as the transferee court, must apply Florida state law because the case was originally filed in Florida state court before being removed and transferred here.  In any event, the outcome of the collateral estoppel issues would be the same regardless of whether D.C. or Florida law applies because D.C. collateral estoppel requirements are essentially identical to those under Florida state law.  See Yamaha Corp. of Am. v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992); Washington Medical Center, Inc. v. Holle, 573 A.2d 1269, 1283 (D.C. 1990).

*18.  Judge Kollar-Kotelly noted that Judicial Watch was required by law to file the Form 990

tax returns, so those tax returns were absolutely privileged against a defamation claim.  Id.  Here,

defendants argue that Judge Kollar-Kotelly's decision collaterally estops Klayman from using the

Form 990 tax returns as the basis for his breach of contract and fiduciary duty claims in this

Court.  Mot. at 11.

   But defendants have not met the requirements of collateral estoppel.  The issues in

Klayman I and in this case are not identical.  The issue before Judge Kollar-Kotelly was whether

the requirement to file the Form 990 tax returns privileged Judicial Watch against a defamation

claim.  Klayman I at *18.  The issue in this case is whether defendants' assistance in the

production of those tax returns constitutes a breach of contract and fiduciary duty.  These two

issues, of course, are not identical.

   Furthermore, because the two issues are not identical, the issue in this case could not have

been fully litigated before Judge Kollar-Kotelly.  Klayman and Judicial Watch litigated whether

the Form 990 tax returns were absolutely privileged, and whether such privilege was an

affirmative defense to a defamation claim.  Klayman I at *18.  The parties did not litigate

whether Judicial Watch's absolute privilege extends to these defendants, who were not required

by law to file the Form 990 tax returns, nor whether absolute privilege bars breach of contract

and breach of fiduciary duty claims.  Because the issues in the two cases are not identical and

hence the issue in this case was not fully litigated in the prior case, collateral estoppel does not

bar plaintiff from bringing his claims against defendants.

*B.  Klayman's Ex-Wife's Allegation*

Defendants' second collateral estoppel argument stems from Judge Kollar-Kotelly's determination that Judicial Watch should not be sanctioned for including Klayman's ex-wife's allegations in its amended counterclaim.  Mot. 12-13.  Judge Kollar-Kotelly determined that those allegations could not have been privileged, reasoning that Klayman waived any attorney-client privilege when he relayed his ex-wife's allegations simultaneously to Barmak and to Judicial Watch employees.  Klayman II, 247 F.R.D. at 17.  Defendants argue that Judge Kollar-Kotelly's ruling estops Klayman's breach of contract and fiduciary duty claims arising from defendants' inclusion of Klayman's ex-wife's allegations in the amended counterclaim in the earlier action.  Mot. at 12-13.

Defendants' argument again fails, this time because Judge Kollar-Kotelly's decision does not qualify as a final judgment on the merits.  Judge Kollar-Kotelly considered this issue in the context of plaintiff's motion for sanctions.  Klayman II, 247 F.R.D. at 16-17.  A resolution of a motion for sanctions is not a final judgment on the merits because it "does not signify a district court's assessment of the legal merits of the complaint," and therefore it cannot collaterally estop other claims from proceeding.  Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396-97 (1990).  It would be unfair to preclude an issue based on the resolution of a motion for sanctions because sanctions hearings are procedurally dissimilar to trials.  See Faigin v. Kelly, 184 F.3d 67, 78-79 (1st Cir. 1999); Amwest Mortgage Corp., 925 F.2d 1162, 1164-65 (9th Cir. 1991).  A motion for sanctions does not provide parties an opportunity to litigate fully -- conduct discovery, present and cross-examine witnesses -- as required for application of collateral estoppel.  See Amwest Mortgage, 925 F.2d at 1164-65.  Because sanctions "inquiries are severely restricted, [] it seems

10

odd to extrapolate from them to the subsequent litigation of issues on the merits." <u>Faigin</u>, 184 F.3d at 78-79 (internal citations omitted).  Moreover, "[p]reclusion is sometimes unfair if the party to be bound lacked an incentive to litigate in the first trial, especially in comparison to the stakes of the second trial." <u>Otherson v. INS</u>, 711 F.2d 267, 273 (D.C. Cir. 1983).

Hence, Judge Kollar-Kotelly's well-reasoned decision to deny sanctions against Judicial Watch cannot collaterally estop Klayman from asserting breach of contract and fiduciary duty claims against defendants because it was not a decision on the merits.  Rather, it was a sanctions determination.  Klayman may have lacked his current incentive to litigate the issues in his previous motion for sanctions because he now seeks $2 million in damages and $20 million in punitive damages whereas in the prior case he sought only sanctions.  Klayman, therefore, is not barred from bringing his breach of contract and fiduciary duty claims against defendants.

## <u>CONCLUSION</u>

It appears that the Court is required to apply Florida, not D.C., law in this case.  Under Florida law, plaintiff's suit is not barred by the statute of limitations.  Nonetheless, the Court will order further briefing on the issue of personal jurisdiction in Florida.  In any event, plaintiff is not collaterally estopped from pursuing these claims here.  Plaintiff has not fully litigated his claim that publication of the Form 990 tax returns constituted a breach of contract and fiduciary duty.  Nor has plaintiff obtained a final judgment on the merits on his claim that publication of his ex-wife's allegations in a counterclaim constitutes a breach of contract and fiduciary duty.  For these reasons, defendants' motion to dismiss will be denied.  A separate order accompanies this opinion.

**SO ORDERED**.

_____/s/_____

JOHN D. BATES
United States District Judge

Date:   March 13, 2009