UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LARRY KLAYMAN,<br><br>    Plaintiff,<br><br>    v.<br><br>DAVID BARMAK, individually, and MINTZ, LEVIN, COHN, FERRIS, GLOVSKY, AND POPEO, P.C., a professional corporation,<br><br>    Defendants. | Civil Action No. 08-1005 (JDB) |

## MEMORANDUM OPINION

This is a breach of contract and breach of fiduciary duty case filed by Larry Klayman ("plaintiff") against David Barmak, an individual, and Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo, P.C., a law firm (collectively, "defendants"). Plaintiff alleges that defendants breached their fiduciary obligations to him by disclosing false confidential information and by counseling his former employer, Judicial Watch, to assert false claims against him and to interfere with his professional life. Now before the Court is defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim. For the reasons discussed below, defendants' motion will be denied in part and granted in part.

## BACKGROUND

Klayman is the former chairman, general counsel, and treasurer of Judicial Watch. Am. Compl. ¶ 5. He currently resides in Florida. Id. ¶ 2. Barmak resides in Maryland, practices law in Washington, D.C., and is a partner in the law firm Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo ("Mintz Levin"). Id. ¶ 3; Defs.' Decl. ¶ 1. Mintz Levin has offices in Massachusetts,

Connecticut, New York, California, Washington D.C., and London.  Id. ¶ 16.  Barmak serves as outside general counsel for Judicial Watch, and Klayman alleges that Barmak also represented him individually.  Am. Compl. ¶ 6.  Klayman ceased employment with Judicial Watch in September 2003.  Id. ¶ 5.  Defendants aided in brokering a severance agreement between Klayman and Judicial Watch, in which Klayman was represented by separate counsel.  Id. ¶ 8.  Some of the allegations in the instant case arise from disagreements about the execution of that severance agreement.  See id. ¶ 22(E).

In 2006, Klayman brought suit in this Court against Judicial Watch and others alleging fraudulent misrepresentation, breach of contract, unjust enrichment, violation of the Lanham Act, and defamation ("the 2006 Litigation").  Some of those claims are still pending, while others have been dismissed.  See Klayman v. Judicial Watch, Inc., Civ.A.No. 06-670, 2007 WL 140978 (D.D.C. Jan. 17, 2007).  During the 2006 Litigation, Judicial Watch, represented by defendants in the present case, filed a counterclaim for trademark infringement, unfair competition, and cybersquatting, and then filed an amended counterclaim.  See Klayman v. Judicial Watch, Inc., 247 F.R.D. 10, 12 (D.D.C. 2007).  This amended counterclaim included Klayman's ex-wife's allegations about Klayman, which were originally set forth in a sealed divorce hearing and subsequently relayed to defendants, in their capacity as Klayman's personal counsel, by Klayman himself.  Id. at 17.  Klayman then filed a cross-motion for sanctions, arguing that the disclosure of his ex-wife's allegations violated his attorney-client privilege.  The cross-motion was denied because any attorney-client privilege that protected the underlying information was destroyed because another Judicial Watch employee had been present during the disclosure.  Id.

Klayman brought the present action on November 1, 2007 in Florida state court.

Defendants removed the case to the Florida federal court on the basis of diversity jurisdiction. Defendants then moved to dismiss or for transfer based on lack of personal jurisdiction, improper venue, and <u>forum non conveniens</u>.  The Southern District of Florida transferred the case to this Court under 28 U.S.C. § 1404(a) but did not reach defendants' personal jurisdiction arguments.

Defendants renewed their motion to dismiss in this Court, asserting that decisions in the 2006 Litigation collaterally estopped two of plaintiff's claims and that the action is barred by the three-year D.C. statute of limitations.  This Court rejected defendants' collateral estoppel argument.  <u>Klayman v. Barmak</u>, 602 F. Supp. 2d 110, 116–18 (D.D.C. 2009).  On the statute of limitations issue, the Court noted that the five-year Florida statute of limitations would normally apply to this case under the rule of <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 637–39 (1964), which requires application of the law of the transferor forum following a transfer under 28 U.S.C. § 1404(a).  <u>Klayman</u>, 602 F. Supp. 2d at 115.  However, the Court noted that <u>Van Dusen</u> may be inapplicable because Florida may have lacked personal jurisdiction over defendants.  <u>Id.</u> at 116.  Thus, the Court "order[ed] further briefing to determine whether the Florida courts had personal jurisdiction over defendants in the first place, and if not, what that means for the statute of limitations."  <u>Id.</u>  The parties have submitted briefs pursuant to this order, and the statute of limitations issue is now ripe for resolution.

## **STANDARD**

All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47

(1957)); accord Erickson v. Pardus, 551 U.S. ___, 127 S. Ct. 2197, 2200 (2007) (per curiam). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555-56; see also Papasan v. Allain, 478 U.S. 265, 286 (1986).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); Atherton v. District of Columbia Office of the Mayor, --- F.3d ---, 2009 WL 1515373, at *6 (D.C. Cir. 2009).  A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.  This amounts to a "two-pronged approach" under which a court first identifies the factual allegations entitled to an assumption of truth and then determines "whether they plausibly give rise to an entitlement to relief." Id. at 1950-51.

The notice pleading rules are not meant to impose a great burden on a plaintiff. Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512-13 (2002).  When the sufficiency of a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor. Leatherman v. Tarrant County Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979); see also Erickson, 127 S. Ct. at 2200 (citing Twombly, 127 S. Ct. at 1965)). The plaintiff must be given every favorable inference that may be drawn from the allegations of

fact.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).  However, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint."  Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Nor does the court accept "a legal conclusion couched as a factual allegation," or "naked assertions [of unlawful misconduct] devoid of further factual enhancement."  Iqbal, 129 S. Ct. at 1949-50 (internal quotation marks omitted); see also Aktieselskabet AF 21. November 21 v. Fame Jeans Inc., 525 F.3d 8, 17 n.4 (D.C. Cir. 2008) (explaining that the court has "never accepted legal conclusions cast in the form of factual allegations").

## ANALYSIS

**I.  Personal Jurisdiction and Choice of Law**

Whether the law of the District of Columbia or of Florida applies in this case depends upon whether personal jurisdiction over defendants was proper in Florida, where the case was filed.  Ordinarily, when a district court transfers venue under 28 U.S.C. § 1404(a), the law of the transferor court -- here, Florida -- applies.  Klayman, 602 F. Supp. 2d at 115 (citing Van Dusen, 376 U.S. at 637–39).  But if the transferor court lacked personal jurisdiction and the defendants timely objected on jurisdictional grounds, then the law of the transferee court applies.  Manley v. Engram, 755 F.2d 1463, 1467 (11th Cir. 1985); see 14D Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3827 n.24 (2007).  When the transferor court has not determined whether personal jurisdiction was proper, the transferee court must make this determination as the transferor court would have done.  See, e.g., Davis v. Costa-Gavras, 580 F. Supp. 1082, 1086–88 (S.D.N.Y. 1984) (construing Virginia's

long-arm statute after a transfer from that state).  Thus, resolution of the personal jurisdiction question here requires application of Florida law.  Florida courts conduct a two part inquiry for personal jurisdiction: first, at least one prong of Florida's long-arm statute, Fla. Stat. § 48.193, must be met, and second, constitutional due process limitations must be satisfied.  Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 502 (Fla. 1989).  Applying this test, Florida lacked personal jurisdiction over defendants, and D.C. law therefore governs this case.

**A. General Personal Jurisdiction**

Plaintiff first argues that Mintz Levin has sufficient contacts with Florida independent of this lawsuit to subject it to general personal jurisdiction there.  Plaintiff alleges that Mintz Levin "does business in Florida," Am. Compl. ¶ 4, in that the firm advises Florida clients and participates in Florida litigation, Pl.'s Aff. ¶ 28.[1]  Although defendants acknowledge that Mintz Levin has "provided legal advice to clients who are resident in Florida or clients who have matters pending in Florida" and that it has been admitted pro hac vice to Florida courts, Defs.' Decl. ¶ 17, they argue that these contacts are insufficient for general personal jurisdiction.

Defendants are correct that the specified facts do not give rise to general personal jurisdiction in Florida.  The Florida long-arm statute confers general personal jurisdiction if the defendant "is engaged in substantial and not isolated activity within" Florida, whether or not that activity pertains to the instant lawsuit.  Fla. Stat. § 48.193(2).  The Eleventh Circuit recently

---

[1] When extra-pleading material is attached to a Rule 12(b)(6) motion, courts must normally treat the motion as one for summary judgment.  Fed. R. Civ. P. 12(d).  Here, however, the extra-pleading material has been supplied to aid the Court in resolving an underlying jurisdictional question, and courts may look beyond the pleadings to resolve such jurisdictional issues.  See Coalition for Underground Expansion v. Mineta, 333 F.3d 193, 198 (D.C. Cir. 2003).

applied this provision to a nonresident law firm that worked with local counsel and appeared in Florida courts. Snow v. DirecTV, Inc., 450 F.3d 1314, 1316 (11th Cir. 2006). The court concluded that despite the firm's appearances in court, its "lack of a physical presence in Florida, its non-solicitation of Florida clients, and its deriving less than one percent of its revenues from matters connected with Florida" defeated general personal jurisdiction under § 48.193(2). Id. at 1319. In the present case, Mintz Levin has no staff or property in Florida, and hence, under Snow, its involvement in cases there is more "isolated" than "substantial." See id.

Nor do these contacts satisfy constitutional due process requirements. The Supreme Court requires contacts to be "continuous and systematic" for general personal jurisdiction. Helicopteros Nacionales de Colombia, S.A., v. Hall, 466 U.S. 408, 416 (1984). In Helicopteros, the Court found no general personal jurisdiction over a company that sent officers to a state to negotiate deals, that purchased helicopters from a company in the state, and that regularly sent staff there to attend training. Id. The contacts that Mintz Levin has with Florida are significantly less continuous and systematic than the contacts that the defendants had in Helicopteros. Plaintiff has provided no evidence that Mintz Levin sought business in Florida or sent staff there for any engagement beyond the scope of isolated lawsuits. Thus, general personal jurisdiction in Florida will not lie.

### B. Specific Personal Jurisdiction for Communications

Next, plaintiff argues that specific personal jurisdiction in Florida is proper in that defendants "have significant contact with Florida" because they have sent him "mail, telephone, and email communications" there. Am. Compl. ¶ 16. Plaintiff has submitted facsimiles of nine letters sent by defendants to plaintiff or his representatives in Florida, with dates from 2003

through 2006, in support of his claim.  Pl.'s Mem. at Ex. 2.  Defendants deny that such communications are "significant."  Defs.' Decl. ¶ 12.

These contacts do not satisfy Florida's long-arm statute for specific personal jurisdiction. Specific jurisdiction is proper if the defendant has "committ[ed] a tortious act within" Florida. Fla. Stat. § 48.193(1)(b).  Communications sent to Florida, however isolated, may give rise to personal jurisdiction under this provision if those communications themselves caused a tort in Florida.  Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1168 (11th Cir. 2005).  However, although the correspondence that plaintiff provides discusses the injury he alleges, he does not allege that the correspondence itself caused the injury in Florida.  Florida law requires that if personal jurisdiction is based on communications sent to Florida, those communications must have caused the injury at issue.  See id.  Moreover, plaintiff seeks relief under a theory of contract breach, not under a tort theory.  Am. Compl. ¶¶ 26, 32.

To be sure, specific jurisdiction may also be proper if the defendant "breach[ed] a contract . . . by failing to perform acts required by the contract to be performed in" Florida.  Fla. Stat. § 48.193(1)(g).  But this provision applies only if the contract required performance, such as a payment, in Florida.  Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1250 (11th Cir. 2000).  "[A] contractual duty to tender performance to a Florida resident is not in itself sufficient to satisfy the statute."  Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1218 (11th Cir. 1999) (per curiam).  Assuming defendants owed plaintiff a fiduciary duty or performance of a contract, plaintiff has proffered no evidence that this duty was specifically to be performed in Florida, apart from plaintiff's incidental residence there.  Section 48.193(1)(g) is therefore inapplicable and cannot form the basis in this case for specific personal jurisdiction in Florida.

Defendants' communications into Florida are also insufficient to warrant personal jurisdiction in Florida as a matter of constitutional due process. In some factual settings, a party who breaches a contract with a resident of a state may be subject to personal jurisdiction in that state even if the contract was its only contact with that state. See, e.g., McGee v. Int'l Life Ins. Corp., 355 U.S. 220, 223 (1957). In McGee, the Supreme Court approved California's exercise of personal jurisdiction over an insurer whose only apparent contact with California was its contract with the plaintiff. The insurer's predecessor had entered into the contract while the plaintiff lived in California, and the insurer mailed a reinsurance certificate to California upon assuming the policy. Id. at 221. However, the facts of the present case are more analogous to Hanson v. Denckla, 357 U.S. 235 (1958), than to McGee. In Hanson, a trust company entered into a contract with a woman who subsequently moved to Florida. Unlike in McGee, the trust company had not solicited the woman's business while she was a Florida resident. The Court held that such contacts were not sufficient to hale the trust company into a Florida court. Hanson, 357 U.S. at 251–52. In the instant case, as in Hanson, defendants' contacts with Florida, insofar as they consist of sending letters there after a contract was made elsewhere, were an artifact solely of plaintiff's decision to move to Florida. Hence, this ground for personal jurisdiction does not meet the constitutional requirements of due process.

**C.  Specific Personal Jurisdiction for Allegations**

Plaintiff's final possible ground for personal jurisdiction over defendants in Florida is that defendants, "[a]s part of their legal advice to Judicial Watch" during the 2006 Litigation "and otherwise," "participated in causing Judicial Watch to publish in Florida . . . [the] allegations made by the Plaintiff's ex-wife[.]" Am. Compl. ¶ 16. Plaintiff also alleges that defendants

"published the allegations nationwide and specifically in . . . Florida, and in such other media outlets as the Legal Times and the internet."  Am. Compl. ¶ 19.  Defendants reply that they "have never disclosed or caused the publication of confidential allegations regarding the Plaintiff, in Florida or elsewhere."  Defs.' Decl. ¶ 2.

These contacts do not satisfy Florida's long-arm statute for specific personal jurisdiction.  The relevant provisions of § 48.193(1) are again subsections (b), for tort, and (g), for contract.  Subsection (g) once again does not apply because plaintiff has not shown that defendants were obligated to perform any acts in Florida as part of their contract or fiduciary duty.  Subsection (b) does not apply because plaintiff fails to meet the pleading standards of Rule 12(b)(6).  Plaintiff's allegation that defendants published materials in Florida provides no factual basis from which to draw an inference in his favor.  The mere allegation that defendants published damaging materials in Florida is the kind of "naked assertion" that "without some further factual enhancement [] stops short of the line between possibility and plausibility of entitlement to relief."  Twombly, 550 U.S. at 557 (internal quotation marks omitted).

These contacts do not satisfy constitutional due process requirements either.  Under a contract theory, defendants must have purposefully directed their activities to Florida in order to be subject to personal jurisdiction there.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985) (construing Fla. Stat. § 48.193(1)(g)).  As described above, defendants' contacts with Florida were incidental, not purposeful.  Under a tort theory, personal jurisdiction may lie in Florida if defendants themselves had published damaging material in Florida.  Calder v. Jones, 465 U.S. 783, 790 (1984).  Calder allowed personal jurisdiction over the editor of a magazine that had published such material in the plaintiff's home state.  However, in the present case,

plaintiff has not alleged that defendants themselves published the allegedly false statements. Instead, plaintiff only claims -- without a factual basis -- that "media outlets such as the <u>Legal Times</u>" published the statements in Florida.  Am. Compl. ¶ 19.

In sum, plaintiff offers three grounds for subjecting defendants to personal jurisdiction in Florida, but each fails to satisfy either of the two requirements for personal jurisdiction: a basis for personal jurisdiction under the Florida long-arm statute and constitutional due process.  Thus, because Florida lacked personal jurisdiction over defendants, this Court must apply D.C. law to plaintiff's claims.  <u>Manley</u>, 755 F.2d at 1467.

## II.  Statute of Limitations

The D.C. statute of limitations for actions for breach of contract is three years.  D.C. Code Ann. § 12-301(7).  The same period applies to breach of fiduciary duty actions.  <u>Id.</u> § 12-301(8); <u>Mawalla v. Hoffman</u>, 569 F. Supp. 2d 253, 257 (D.D.C. 2008).  Plaintiff bases his action for breach of contract and of fiduciary duty on two discrete sets of facts.  First, plaintiff alleges that defendants, in the course of the 2006 Litigation, disclosed certain allegations made by his ex-wife during sealed divorce proceedings ("disclosure claims").  Am. Compl. ¶¶ 9–21.  Second, plaintiff contends that defendants counseled Judicial Watch to seek reimbursement for false expenses, threatened plaintiff with litigation, counseled Judicial Watch to interfere with plaintiff's media relationships, counseled Judicial Watch to violate portions of plaintiff's severance agreement, and provided misleading information to Judicial Watch's accountant ("Judicial Watch claims").  Am. Compl. ¶ 22.  These allegations arise from plaintiff's departure from Judicial Watch in September 2003.

Claims are severable for statute of limitations purposes if "breaches of duty [] occur in

distinct intervals or installments, as opposed to being continuous[.]" Union Labor Life Ins. Co. v. Sheet Metal Workers Nat'l Health Plan, Civ.A.No. 90-2728, 1991 WL 212232 at *5 (D.D.C. Sep. 30, 1991) (applying severability doctrine to distinct contract claims). The Judicial Watch claims and the disclosure claims are distinct allegations of breach of duty. Like nonpayments on installment contracts, they are separated by time and stand on their own as claims. Thus, "the statutes of limitations . . . run separately for each." See id.

The D.C. statute of limitations does not bar plaintiff's disclosure claims. The alleged disclosures took place during the course of the 2006 Litigation, which began early in 2006. Plaintiff initiated this action on November 1, 2007. Because fewer than three years passed between the alleged disclosures and the initiation of this suit, the statute of limitations does not bar claims based on paragraphs 9–21 of plaintiff's amended complaint.

The analysis of plaintiff's Judicial Watch claims, however, is more complicated. Plaintiff seeks to bring the entire course of defendants' alleged conduct within the statute of limitations because it has continued up to the present. Pl.'s Mem. at 2. Plaintiff appears to be invoking the doctrine of continuing wrongs, which applies when a plaintiff alleges "(1) a continuous and repetitious wrong, (2) with damages flowing from the act as a whole rather than from each individual act, and (3) at least one injurious act within the limitation period." Whelan v. Abell, 953 F.2d 663, 673 (D.C. Cir. 1992) (quoting DeKine v. District of Columbia, 422 A.2d 981, 988 n.16 (D.C. 1980)).

Plaintiff's Judicial Watch claims "state a claim to relief that is plausible" for meeting the three-part Whelan test. See Iqbal, 129 S. Ct. at 1949. For example, plaintiff alleges that defendants have breached their fiduciary duty by "[c]ounseling and suggesting to Judicial Watch

...

. . . to publish statements that Plaintiff was only an employee of Judicial Watch and not its founder and Chairman, in order to diminish . . . Plaintiff's reputation[.]" Am. Compl. ¶ 22(D). It is plausible that defendants' advice to Judicial Watch is continuous and that defendants have provided at least some counsel to Judicial Watch within the statutory period. Moreover, the allegation uses the present tense, and the correspondence that plaintiff has submitted -- bearing dates as recent as 2006 -- further underscores that such acts may be ongoing. Pl.'s Mem. at Ex. 2. In addition, to the extent that Judicial Watch may have heeded defendants' alleged advice, plaintiff's harm flows from that advice taken together rather than from isolated pieces of advice. The Court must draw inferences in plaintiff's favor at this stage of the proceedings, and hence concludes that the Judicial Watch claims "plausibly give rise to an entitlement to relief" under the doctrine of continuing wrongs. Iqbal, 129 S. Ct. at 1950–51. Plaintiff's other allegations in the Judicial Watch claims support similar conclusions. Am. Compl. ¶ 22.

But the doctrine of continuing wrongs does not save plaintiff's Judicial Watch claims in their entirety because plaintiff had notice of defendants' alleged acts as soon as they began. "[O]nce the plaintiff has been placed on notice of an injury and the role of the defendants' wrongful conduct in causing it, the policy disfavoring stale claims makes application of the 'continuous tort' doctrine inappropriate." Beard v. Edmondson and Gallagher, 790 A.2d 541, 548 (D.C. 2002) (quoting Hendel v. World Plan Executive Council, 705 A.2d 656, 667 (D.C. 1997)); accord Jung v. Mundy, Holt & Mance, P.C., 372 F.3d 429, 433–34 (D.C. Cir. 2004). Plaintiff was on immediate notice of defendants' alleged breach of duty because Judicial Watch supposedly took immediate actions pursuant to defendants' advice. For example, Judicial Watch allegedly claimed reimbursement for expenses and withheld plaintiff's health insurance under

COBRA upon execution of the severance agreement in September 2003. Am. Compl. ¶¶ 22(A), 22(E). Under Beard, plaintiff may not recover for actions of which he had notice prior to the beginning of the three-year statutory period, even if the doctrine of continuing wrongs applies. See Beard, 790 A.2d at 548.

Nonetheless, "filing after the limitations period has run does not mean that there can be no recovery." Jung, 372 F.3d at 433. Even if the damages that flow from defendants' alleged conduct arise principally from that conduct as a whole rather than from the individual actions that comprise it, plaintiff nonetheless may seek recovery for the individual actions that fall within the statutory period. Here, the statutory period began three years before plaintiff filed this lawsuit on November 1, 2007. Thus, plaintiff's suit is not barred with respect to actions taken since November 1, 2004 that are actionable independent of the actions taken before November 1, 2004. See Beard, 790 A.2d at 549. For example, if defendants advised Judicial Watch to publish harmful material after November 1, 2004, plaintiff's claim for that action may stand; if defendants only provided such advice before November 1, 2004, plaintiff's claim is barred by the D.C. statute of limitations.

## **CONCLUSION**

Because Florida lacked personal jurisdiction over defendants in the initial action, D.C. law governs this case following its transfer to this Court. The three-year D.C. statute of limitations bars any claims against defendants arising from alleged conduct occurring prior to November 1, 2004. Claims arising from conduct since that date, including claims regarding defendants' disclosure of privileged information in the 2006 Litigation, are not barred. For these reasons, defendants' motion to dismiss will be granted with respect to all conduct prior to

November 1, 2004 and denied with respect to all other allegations. A separate order accompanies this opinion.

                                                            /s/
                                      JOHN D. BATES
                            United States District Judge

Dated:   July 14, 2009